UNITED STATES COURT OF INTERNATIONAL TRADE
HON. M. MILLER BAKER, JUDGE

--------------------------------------------------------------------

| | | |
|---|---|---|
| RICHMOND INTERNATIONAL FOREST PRODUCTS LLC | : | |
| | : | |
| | : | |
| Plaintiff, | : | Consol. Ct. No. |
| | : | 21-00318 |
| v. | : | |
| | : | |
| UNITED STATES, U.S. CUSTOMS & BORDER PROTECTION | : | |
| | : | |
| Defendants. | : | |

--------------------------------------------------------------------

## ORDER

Upon reading Plaintiff's Motion to Compel Production, upon due deliberation and consideration of all other papers before the Court, and for good cause shown, it is hereby,

ORDERED that Defendant Shall Produce to Plaintiff within 10 Days from the Date of this Order:

1. The Confidential Administrative Record from EAPA Case 7321; and
2. The Documents Referenced in Defendant's Privilege Log dated November 4, 2022.

_____

Judge M. Miller Baker

Dated:    New York, New York
_____, 2023

UNITED STATES COURT OF INTERNATIONAL TRADE
HON. M. MILLER BAKER, JUDGE
------------------------------------------------------------------
RICHMOND INTERNATIONAL                     :
FOREST PRODUCTS LLC                        :
                                           :
                                           :
                          Plaintiff,       :   Consol. Ct. No.
                                           :      21-00318
               v.                          :
                                           :
UNITED STATES,                             :
U.S. CUSTOMS & BORDER PROTECTION           :
                                           :
                       Defendants.         :
------------------------------------------------------------------

## <u>MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>

Pursuant to Rule 37 of the Rules of the United States Court of

International Trade, Plaintiff, Richmond International Forest Products

LLC, respectfully requests that this Court order Defendant, United

States, to provide Plaintiff with the following documents as part of its

responses to Plaintiff's First Set of Interrogatories and Request for

Production of Documents ("discovery requests"):

- Confidential Administrative Record from EAPA Investigation No. 7321
- All Documents on the Government's Privilege Log

Copies of Plaintiff's discovery requests are attached as **Exhibit A**.

Copies of Defendant's written responses to the discovery requests are

attached as **Exhibit B**.  A copy of Defendant's Privilege Log is included as part of **Exhibit B.**  Any other documents from Defendant's response that are relevant to this motion are included as a separate/independent exhibit.

## BACKGROUND

This case involves a decision by the Government to charge Plaintiff millions of dollars in antidumping ("AD"), countervailing ("CVD") and Section 301 duties.  The Government liquidated numerous of Plaintiff's entries and charged Plaintiff these extra duties based on the Government's decision that Plaintiff's products were not made in Cambodia, but instead were of Chinese origin.

During the administrative phase of this case (*i.e.*, as part of Plaintiff's protests filed with Customs), Plaintiff provided Customs with documentation to prove that Plaintiff's goods were, in fact, made in Cambodia.  However, Customs denied Plaintiff's protests and, as a result, Plaintiff initiated four actions in this Court to challenge Customs' denial of its protests:

- *Richmond International Forest Products v. United States*, No. 21-178

- *Richmond International Forest Products v. United States*, No. 21-318
- *Richmond International Forest Products v. United States*, No. 21-319
- *Richmond International Forest Products v. United States*, No. 21-063

The parties resolved case 21-178 after the Government re-reviewed the production records Plaintiff provided with its protest and agreed that they were sufficient to establish the origin of Plaintiff's goods as Cambodia.  A stipulated judgment was entered in that case on July 1, 2022.  The remaining three (3) cases were consolidated under 21-318 and involve the same type of records as those at issue in case 21-178.  Although the Government stipulated to judgment in case 21-178, the Government insists on continuing with this litigation.

## **DISCUSSION**

### I.     **The Information Requested By Plaintiff Is Relevant to the Issues in This Case, and Is Therefore Subject to Discovery Pursuant to USCIT Rule 26(b).**

USCIT Rule 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit." USCIT R. 26(b)(1). Discovery requests must be reasonably calculated to lead to the identification of admissible evidence. <u>See</u> USCIT R. 26(b)(1). *United States v. Greenlight Organic, Inc.*, 280 F. Supp. 3d 1376, 1378 (Ct. Int'l Trade 2017). In addition, "[r]elevancy in discovery is to be construed broadly . . . ." *FDK Am., Inc. v. United States*, 973 F. Supp. 2d 1315, 1318 (Ct. Int'l Trade 2014), *citing Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

Among the allegations in the Plaintiff's complaint, Plaintiff asserts that the documents it provided in support of its protests definitively demonstrated that LB Wood produced the full quantity of merchandise covered by this lawsuit in Cambodia. <u>See</u> Complaint ¶39. The Government denied Plaintiff's protests claiming Cambodian origin for this merchandise, and has denied this allegation. <u>See</u> Answer ¶39.

To determine the facts upon which the Government relied in denying the Plaintiff's protests, Plaintiff served its discovery requests in this case upon defendants' counsel on September 13, 2022. Plaintiff's Interrogatory/Request for Production No. 2 requested as follows:

**Interrogatory/Request for Production No. 2:**

Identify and produce all information in Defendants' possession regarding the operation of LB Wood (Cambodia) Co., Ltd. ("LB Wood") in Cambodia and the manufacture of hardwood plywood and veneered panels at that facility from February 2018 through December 2019.

(a) Your response to this question should include, but should not be limited to, all factual information obtained from any party in connection with CBP's Trade Remedy Law Enforcement Directorate Enforce and Protect Act ("EAPA") Investigation No. 7321, including the information and documentation provided by LB Wood to CBP in response to the questionnaire attached as Exhibit A.

The requested information is clearly relevant to the production at LB Wood and the country of origin of the subject merchandise. In the discovery phase of the current litigation, Plaintiff, via its discovery requests, is simply trying to identify the facts that the Government relied on in determining that Plaintiff's products were not, in fact, of Cambodian origin and were, according to the Government, of Chinese origin. Discovering the factual basis of the Government's reasons for denying Cambodian origin is hardly a big ask of the Government. It is, after all, the central issue in this case.

Determining the Government's factual basis for its position in *this* case is particularly important to Plaintiff since, after reviewing substantially identical documentation submitted with the protest in case 21-178 – a case that also concerned production of plywood at LB

Wood in Cambodia – the Government finally agreed that Plaintiff's merchandise in case 21-178 was of Cambodian origin.  Throughout the administrative proceedings in all of these cases, Customs refused to tell Plaintiff what facts Customs relied on to support its China origin conclusion.  Imagine the Government sending a taxpayer a bill for millions of dollars and also refusing to state why the bill was being issued.  Under the most basic of legal principles, not to mention fundamental fairness, the taxpayer would at least be entitled to know why the bills were issued.

Identifying the specific facts the Government relied on to charge Plaintiff millions of dollars in duties also is important since Plaintiff was not among those importers named in EAPA case 7321 (or any other proceeding).  Thus, Plaintiff does not have any of the information from EAPA case 7321.

Defendant served its *partial* response to the discovery requests on Plaintiff on November 4, 2022.  See **Exhibit B**.  Rather than provide Plaintiff with a complete answer and supporting documentation, Defendant opted to unilaterally decide what documents to provide

Plaintiff and withheld the actual details of the EAPA record (see

highlighted text below).

**Response to Interrogatory/Request for Production No. 2:**

Defendant objects to this interrogatory and request for production to the extent that it seeks "all information" because it is overly broad, unduly burdensome, and seeks confidential business information of third parties. Defendant further objects to this interrogatory and request for production to the extent that it seeks information related to entries made by third parties, which are not relevant to this case. Defendant is limiting its response/production to information regarding the operation of LB Wood in Cambodia (1) obtained or collected in connection with CBP's June 6, 2018 site visit to LB Wood, (2) received from plaintiff in connection with the subject entries and protests, and/or (3) provided by third parties in connection with Enforcement Directorate Enforce and Protect Act ("EAPA") Investigation No. 7321 to be included in the administrative record. Defendant is withholding documents containing confidential business information of third parties and/or privileged documents. Defendant further objects to the request to the extent it seeks documents protected by law enforcement sensitive privilege. Defendant also objects to this interrogatory/request to the extent that it seeks the production of documents that are available to plaintiff or are in plaintiff's possession, custody, or control. Subject to and without waiving these objections, defendant responds:

Defendant identifies and/or is producing the following documents, except for the asterisked documents, which are available to plaintiff and are not being produced:

- The Entry and Protest Documents in the Court File for this Action.*

- Plaintiff's CF28 Response (GOV0002761–GOV0009987).

- 4/17/2019 CEE Meeting Information (GOV0009996–GOV0010005).

- 5/24/2019 Email with Attachment from J. Grimson to R. Bekalarski Re CD? (GOV0010016–GOV0010021).

- 7/18/2019 Email from L. Duvall to K. Cambpell et al. Re LB Wood Photos (GOV0009988–GOV0009995).

- Photos of LB Wood from the June 2018 Site Visit (GOV0002749–GOV0002758; GOV0009988–GOV0009995; GOV00010032–GOV0010035).

- LB Wood Photos (GOV0002759–GOV0002760).

- August 14, 2018 Report of Investigation: Factory Site/Inspection on June 6 & 7, 2018 (GOV0010083–GOV0010087).

- Public Administrative Record from EAPA Investigation No. 7321 (GOV0000001–GOV0002638).

- 4/12/2019 Email from R. Bekalarksi to L. Duvall Re LB Wood (GOV0010006–GOV0010007).

- 4/12/2019 Email from R. Bekalarksi to L. Duvall Re LB Wood (GOV0010008–GOV0010011).

- 5/21/2019 Email from R. Bekalarski to L. Duvall Re LB Wood Followup (GOV0010012– GOV0010015).

- LB Wood Video (GOV0010209).

Defendant's response to the discovery requests was not complete because Defendant unilaterally withheld production of certain highly relevant documents, which it claimed it did not have to produce because they were confidential and/or law enforcement sensitive.  Neither of these claims, however, can support the withholding of the requested information from Plaintiff.[1]

## II.  The Government Has No Legal Basis to Withhold the Confidential EAPA Case 7321 Record From Plaintiff

### A.  The Privacy Act (5 U.S.C. §552a) does not preclude the release of the confidential record in EAPA case 7321 to Plaintiff.

As can be seen from the above response, Defendant withheld the _**confidential**_ EAPA case 7321 record from its discovery response (the Government identified the public version of those documents as GOV0000001-GOV0002638).  As can also be seen from the public version that Defendant disclosed to Plaintiff (copy attached as **Exhibit C**), the public version does not provide Plaintiff with _**any**_ basis for

---

[1]  Plaintiff advised Defendant that it did not believe Defendant was justified in withholding any of the above documents.  Plaintiff and Defendant have had various phone calls and discussions in an attempt to resolve this matter.  However, such discussions have not resulted in production of any additional documents to Plaintiff, and thus Plaintiff has filed this motion to compel the production of that information.

understanding what facts Defendant relied on to unilaterally change the origin of Plaintiff's goods from Cambodia to China.  This is particularly egregious since Defendant *explicitly* stated that the EAPA case was a reason why it changed the origin of Plaintiff's goods.  See **Exhibit B** - Defendant's response to Interrogatories 4, 5 and 6.

To be clear, the result in EAPA case 7321 is legally irrelevant to the origin of the imported goods covered by *this* case.  Plaintiff was not an "interested party" in that case within the meaning of that term set forth in 19 U.S.C. §1517(a)(6).  The company was not alleged to have entered merchandise subject to the AD/CVD orders covering certain hardwood plywood from China into the customs territory of the United States through evasion.  Plaintiff never received a questionnaire with respect to such entries, had no right to file comments in the administrative proceeding, and no ability to challenge the result of the proceeding in this Court.

Plaintiff is therefore not covered by the determination reached by CBP in EAPA case 7321.  Nevertheless, the Government insists on using the result in EAPA case 7321 as a collateral attack on the origin of the goods entered by Plaintiff in *this* case, explicitly stating as much

in its response to Plaintiff's Interrogatory No. 5 ("In Enforce and Protect

Act ('EAPA') Investigation 7321, CBP determined that the record

supported a conclusion that LB Wood supplied Chinese-origin plywood

to two importers, which was falsely designated as made in Cambodia

when imported into the United States.").  The full confidential record in

EAPA case 7321 is thus, on its face and by the Government's own

admission, clearly relevant to its claim or defense in this matter

pursuant to USCIT Rule 26(b)(1).

In a teleconference on November 30, 2022, counsel for the

Government claimed that it was precluded from releasing the

confidential record in EAPA case 7321 by the Privacy Act (5 U.S.C.

§552a) – see the e-mail attached as **Exhibit D**:

> As mentioned during our call on November 30, 2022, the
> government is precluded by the Privacy Act (5 U.S.C. §552a)
> from disclosing the confidential documents.  Although we
> discussed the possibility of CBP releasing the documents
> with LB Wood's consent during our call on November 30th,
> plaintiff should seek the documents directly from LB Wood
> and/or the other third-parties (either with their consent or
> via a subpoena).

Importantly, the portion of the statute upon which the Government

relies states that "[n]o agency shall disclose any record which is

contained in a system of records by any means of communication to any person, or to another agency, ***except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains*** . . . ." 5 U.S.C. §552a(b) (emphasis added).  In fact, Plaintiff obtained and provided Defendant with a letter from LB Wood (the producer of the merchandise at issue) advising the Government that LB Wood did not object to the Government releasing any LB Wood data to Plaintiff.  See **Exhibit E**.  Therefore, there is no statutory bar to the release of the confidential record in EAPA case 7321 to Plaintiff.

As the Court can readily observe from **Exhibit C**, the public version of the EAPA administrative record that the Government produced to Plaintiff is too heavily redacted to provide Plaintiff with any meaningful understanding as to why the Government concluded that Plaintiff's specific goods are of Chinese origin.  Producing only the public version of these documents does not provide Plaintiff with any way to know the facts that the Defendant relied on to conclude that Plaintiff's specific goods were of Chinese, and not Cambodian, origin.

Moreover, the Government's suggestion – set forth in its e-mail above – that Plaintiff "seek the documents directly from LB Wood and/or the other third-parties" is wholly insufficient as a response to the Plaintiff's discovery request **to the Government** for the confidential record in EAPA case 7321.  Plaintiff's Interrogatory/Request for Production No. 2 asked for "all information in Defendant's possession regarding the operation of LB Wood . . . ."  By its terms this request was not limited to information that LB Wood or other third parties may have provided to the Government, but includes information that the Government may have obtained from other sources, as well.[2]  Plaintiff cannot reasonably obtain such clearly relevant information from LB Wood or other third parties (even assuming it could identify the information).

**B.    The judicial protective order in place in this case adequately protects the business confidential information of LB Wood and any other parties whose information is contained in the confidential record in EAPA case 7321.**

---

[2] This is consistent with the text of 5 U.S.C. §552a(a)(4), which defines the "records" protected from disclosure under the statute as "any item, collection, or grouping of information *about* an individual that is maintained by an agency . . ," not just information provided *by* that person.  (emphasis added).

Plaintiff, in its discussions with Defendant regarding the release of the confidential record in EAPA case 7321, reminded Defendant that a judicial protective order exists in this case (see CM/ECF # 35). Plaintiff indicated that if Defendant for some reason did not believe the current language of the judicial protective order was sufficient, that Plaintiff was amenable to requesting a modification of the protective order.  Nevertheless, to date, Defendant still refuses to produce the confidential EAPA record to Plaintiff and has not produced any of the confidential EAPA records, including those relating to LB Wood.

EAPA is a relatively new law – with the first EAPA cases being brought in 2016.  To the best of the undersigned's knowledge, this is the first case before the Court involving a discovery dispute where the Government is refusing to release to a litigant the entire EAPA record. However, in other cases where an EAPA litigant did not have access to the confidential administrative EAPA record, this Court has utilized a judicial protective order and allowed for release of the EAPA record to a party who did not have access to that record in the EAPA administrative proceeding.

For example, in the case of *Ad Hoc Shrimp Trade Enforcement Committee v. United States*, 578 F. Supp. 3d 1310 (Ct. Int'l Trade 2022), the Court confronted litigation where the petitioner in the EAPA case (*i.e.*, the Ad Hoc Shrimp Trade Enforcement Committee or "AHSTEC") asserted, among other claims, that Customs' decision in an administrative EAPA proceeding was faulty because Customs did not comply with the public summarization requirement of the EAPA regulations.  The case also involved substantive EAPA issues that are not relevant to this litigation, and Judge Kelly ultimately remanded the case back to Customs regarding those issues.  However, important here is that when Judge Kelly remanded the case back to Customs, she instructed:

> EAPA does not provide for an administrative protective order ("APO") during administrative proceedings. See 19 U.S.C. §1517; 19 C.F.R. §165. Thus, there was no APO for the proceedings before CBP in this case, which is why the issue of adequate public summarization is before the court. However, the parties to this action all have access to the confidential record, subject to the terms of the judicial protective order ("JPO") issued by the court. See Order, May 14, 2021, ECF No. 19. At oral argument, AHSTEC suggested that if the court were to remand the CBP Decisions, it would essentially pretend that it did not have access to the confidential record and make arguments based on the information it had access to during the administrative proceeding. Oral Arg. at 53:52–55:04.

> Now that the parties have access to the confidential record, the court sees no reason for pretense. The genie is out of the bottle and subject to the protections of a JPO. Therefore, the court will order that the JPO, or some version of it, will extend to the administrative remand proceedings to allow parties to make arguments based on the entire record. 15 See 28 U.S.C. § 2643(c)(1). The parties shall meet and confer in order to submit any proposed revisions for the JPO in accordance with the court's order.

*Ad Hoc Shrimp Trade Enf't Comm.*, 578 F. Supp. 3d at 1322.

The same should apply here.  That is, just as Judge Kelly ***allowed***

***the AHSTEC to have access to business confidential information***

***of parties other than AHSTEC based on a judicial protective***

***order***, the Court should also, subject to the current judicial protective

order, order Defendant to release the EAPA record to Plaintiff.[3]

## III. The Government's Reliance Upon the Law Enforcement Privilege Cannot Justify Its Withholding of Relevant Information From Plaintiff in This Case.

Turning to the Government's basis for withholding other

documents in its privilege log on the grounds that they are law

---

[3] Alternatively, should Plaintiff not be allowed to see the entire confidential EAPA record, the Plaintiff requests that the Court treat this motion as a motion *in limine* to exclude any of the confidential EAPA records from use in this proceeding.  Clearly, if Plaintiff is not allowed to see such documents, Defendant should not be allowed to use them against Plaintiff either.

enforcement sensitive, the Government's withholding of those documents is also improper.  To be sure, there are instances where law enforcement sensitive documents need not be produced.  However, this is not one of those instances.  A relatively recent district court decision in California (*Perez v. United States*, 2016 U.S. Dist. LEXIS 11036 (S.D. Cal. Jan. 29, 2016)) summarizes the rule applicable to law enforcement privilege, demonstrating that its use is wholly inapplicable here:

> The purpose of [the law enforcement privilege] is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."  However, "the official information privilege and its kin [*i.e.*, the law enforcement privilege] are not absolute.'  In determining what level of protection should be afforded by this privilege, courts conduct a case-by-case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege.

> First, "based on defendants' objections to disclosure and accompanying affidavits or declarations[,]" the court determines whether the party asserting the privilege has made a "substantial threshold showing that disclosure of specific information would result in specific harm to identified important interests."  The affidavit or declaration offered to support the assertion of privilege must be from an agency official and must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality ..., (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or

17

privacy interests that would be threatened by disclosure of the
material to plaintiff and/or his lawyer, (4) a description of how
disclosure subject to a carefully crafted protective order would
create a substantial risk of harm to significant governmental or
privacy interests, (5) and a projection of how much harm would be
done to the threatened interests if the disclosure were made.  If no
showing is made through the declaration or affidavit, the court
should order disclosure.

Second, if a threshold showing is made, the court considers the
parties' papers and affidavits in conjunction with the actual
documents submitted for *in camera* review.  The court's analysis
focuses on the extent to which the defendant's interest in
confidentiality outweighs the plaintiff's interest in the
information.  It is only in this second step that the distinction
among the different federal privileges is relevant. The official
information privilege and the law enforcement privilege, for
example, apply different factors when the court balances the
interests of the government and the interests of the party seeking
discovery.

*Perez*, 2016 U.S. Dist. LEXIS 11036, pp. 6-8 (internal citations omitted).

It bears repeating that this is *not* a law enforcement case, and it is

not an EAPA case.  This is a challenge, pursuant to this Court's protest

jurisdiction, to factual determinations made by CBP regarding the

country of origin of the subject merchandise.  There is no "investigation"

to speak of.  There are no law enforcement techniques or procedures

involved, no confidential sources to be preserved, and no witnesses or

law enforcement personnel to be protected.

Nevertheless, the Government asserts the law enforcement sensitive privilege here but does not even *attempt* to make the requisite showing to support such a claim.  It only includes the notation "LES" in its privilege log followed by boilerplate language that states for each document withheld:

> [Document description] the disclosure of which would reveal law enforcement investigative information, techniques, and procedures, and, if disclosed will risk circumvention or evasion of the law

This is hardly the required showing.  In fact, in the *Perez* case quoted above, the Government's affidavit was strikingly similar to the Government's language in the privilege log here:

> the entire substance of the declaration states that both "documents contain information regarding CBP's techniques and procedures.  In order to preserve the confidentiality of the information and protect law enforcement personnel, these two documents should not be disclosed to the public.

*Perez,* 2016 U.S. Dist. LEXIS 11036, p. 10.  Just as the district court did in that case, the Court here should find that the Government has failed to substantiate its LES claim.

Indeed, leaving aside that the Government here submitted ***no affidavit or declaration whatsoever***, it is hard to fathom how the Government could *ever* make the required showing in this case.  The

Government already concluded (whether rightly or wrongly) that circumvention or evasion was occurring with respect to other importers, so how could disclosure risk any *further* circumvention or evasion? Similarly, the entirely separate EAPA case was completed administratively more than two years ago on June 29, 2020, so how could disclosure of records from that case harm any government interest around plywood imports from Cambodia three years later?

The Government's claim for privilege also fails because the Government would have to show how, even with the protective order in place in this case, disclosure of the information would still create "a substantial risk of harm to significant governmental or privacy interests." *Perez*, 2016 U.S. Dist. LEXIS 11036, p 8.  It is patently clear that disclosure of the EAPA record, or the other e-mails and documents containing relevant information sought by Plaintiff, under judicial protective order would not result in any harm to Defendant.

Lastly, even if the Government were to submit such an affidavit, the Court must still balance the Government's request for non-production against the rule favoring disclosure.  Plaintiff respectfully submits that any Government interests favoring non-production are

greatly outweighed by a citizen's fundamental right to know why the Government has charged it with millions of dollars in duties – that is, Plaintiff is entitled to know what facts the Government believes support a China country of origin – particularly when the Government has already agreed in case 21-178, based on the same documentation the Government has for this case, that Plaintiff's documentation supports a country of origin of Cambodia.

Therefore, we respectfully request that the Court order Defendant to disclosure to Plaintiff the confidential administrative record from EAPA case 7321 along with all the other documents listed in Defendant's privilege log.

Respectfully submitted,

Michael E. Roll
Brett Ian Harris
ROLL & HARRIS LLP
Attorneys for Plaintiff
1999 Avenue of the Stars – Suite 1100
Los Angeles, CA 90067
310-294-9501

Jeffrey S. Grimson
Jill A. Cramer
MOWRY & GRIMSON, PLLC
5335 Wisconsin Avenue, Suite 810
Washington, DC 20015

202-688-3610
trade@mowrygrimson.com


By: /s/ Michael E. Roll
One of Plaintiff's attorneys


Dated: January 31, 2023

UNITED STATES COURT OF INTERNATIONAL TRADE
HON. M. MILLER BAKER, JUDGE
--------------------------------------------------------------------

| | | |
|---|---|---|
| RICHMOND INTERNATIONAL FOREST PRODUCTS LLC | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | Consol. Ct. No. |
| | : | 21-00318 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| U.S. CUSTOMS & BORDER PROTECTION | : | |
| | : | |
| Defendants. | : | |

--------------------------------------------------------------------

CERTIFICATE OF COMPLIANCE WITH WORD COUNT
LIMITATION IN THE COURT'S STANDARD CHAMBER
PROCEDURES

I, Michael Roll, of Roll & Harris, LLP, am responsible for filing the foregoing motion to compel, relying upon the Microsoft Word-Count feature of the word processing system used to prepare the motion, certify that this motion complies with the word count limitation of the U.S. Court of International Trade Standard Chamber Procedures and contains 4,077 words.


/s/Michael Roll

January 31, 2023